UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| FALONI & ASSOCIATES, LLC, | CIV 19-4195 |
| Plaintiff, | |
| -vs- | MEMORANDUM OPINION AND ORDER |
| CITIBANK N.A.; a/k/a CITIMORTGAGE, INC.; a/k/a CITIFINANCIAL, INC., | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff, Faloni & Associates, LLC ("Faloni"), brought this action in the Superior Court of Essex County, New Jersey on March 7, 2019, alleging breach of contract, promissory estoppel, unjust enrichment, and two counts of account stated. (Doc. 1.) On April 10, 2019, Defendant, Citibank, N.A.; a/k/a Citimortgage, Inc.; a/k/a Citifinancial, Inc. ("Citibank") removed the case to the U.S. District Court for the District of New Jersey. (Doc. 1.) On June 26, 2019, Citibank filed a motion to transfer the case to the U.S. District Court for the District of South Dakota pursuant to a forum selection clause in a contract between the parties. (Doc. 16). On October 16, 2019, the New Jersey federal court transferred the case to the District of South Dakota. (Docs. 33 and 34.)

After the case was transferred to this Court, Citibank filed a Motion to Dismiss. (Doc. 55.) The motion has been fully briefed. For the following reasons, Citibank's motion to dismiss will be granted in part and denied in part.

## BACKGROUND

Faloni is a law firm licensed to do business in the State of New Jersey. Citibank is a national bank with its main office in South Dakota. For a number of years, Faloni represented Citibank in connection with certain lawsuits brought to collect amounts owed by Citibank customers.

On April 4, 2012, Citibank entered into a Consent Judgment with the United States, the District of Columbia, and 49 states. *See* Doc. 57, Declaration of Christopher Comstock, Ex. 2; *United States of America, et al. v. Bank of America Corp., et al.*, CIV 12-0361, Doc. 12 (D.D.C. 2012). Among other things, the Consent Judgment required Citibank to provide at least $1.411 billion in mortgage loan relief to distressed borrowers. *Id.* ¶ 5. Mortgage loan forgiveness was one form of relief Citibank could provide to distressed borrowers under the Consent Judgment. *Id.* at Ex. D, ¶¶ 1-2.

A Monitor was appointed under Citibank's Consent Judgment. On March 18, 2014, the Monitor filed a report finding that Citibank and its affiliates had substantially complied with the terms of the Consent Judgment and had "satisfied the minimum requirements and obligations" to provide consumer relief. *United States of America, et al. v. Bank of America Corp., et al.*, CIV 12-0361, Doc. 145, Monitor's Final Consumer Relief Report (D.D.C. 2012). (Excerpts of Monitor's Final Consumer Relief Report are attached as Exhibit 6 to Doc. 57, Comstock Declaration.).

In the Complaint in this case, Faloni alleges that Citibank placed certain "delinquent 2nd mortgages with Faloni" for collection. Complaint ¶ 4. Faloni commenced legal proceedings to collect the debts. Complaint ¶ 5. However, Citibank allegedly forgave the debts "in response to the national mortgage settlement campaign." Complaint ¶ 6; Complaint, Ex. A, May 7, 2018 Letter (stating that Citibank "chose to extinguish the debt" on certain mortgage loans that had been placed with Faloni). Faloni alleges that, by forgiving the mortgage loans that had been placed with Faloni, Citibank received in January 2013 a "credit" of over $40 million toward its obligation to the government. Complaint ¶ 6.

Attached to Faloni's Complaint is a letter dated May 7, 2018 from Faloni to Citibank. (Doc. 1, Complaint, Ex. A.) The letter states that Citibank "terminated" the firm on November 24, 2014. The letter references "two outstanding invoices owed to our firm by Citibank for work done prior to and relating to our termination." *Id.* Copies of the invoices are attached to the letter. The first invoice is "dated June 2, 2015 in the sum of $21,002.50 . . . ." *Id.* This invoice relates to work done by Faloni to transfer Citibank's files to another law firm, Ruben & Rothman, after Citibank terminated its relationship with Faloni. *Id.* The invoice reflects services performed between October 27, 2014 and May 18, 2015. *Id.*

2

The second invoice is dated May 7, 2018 and is in the amount of $8,122,410.20. *Id.* Faloni states that this "invoice relates to Citibank's National Mortgage Settlement Campaign" and asserts that Citibank "received credit" of over $40 million toward the consumer relief obligations because Citibank "chose to extinguish the debt" on mortgage loan accounts that had been placed with Faloni. *Id.* The letter asserts that Faloni should receive a commission because it worked on the accounts and many of them had been "brought to judgment." *Id*. at 10. Faloni alleges that Citibank has not paid either of these two invoices. Complaint ¶¶ 7, 31.

The first four causes of action in Faloni's Complaint allege claims for breach of contract, promissory estoppel, unjust enrichment, and account stated. The Complaint also includes a fifth cause of action for "Additional Accounts Stated" which relates to Faloni's June 2, 2015 invoice in the amount of $21,002.50. In its response to Citibank's motion to dismiss, Faloni admits that its claims for "account stated" in Counts IV and V are not valid causes of action in South Dakota. For this reason, Counts IV and V of Faloni's Complaint will be dismissed.

In its response to Citibank's motion to dismiss, Faloni asks the Court to grant its motion to amend its Complaint to conform to South Dakota law. (Doc. 66 at 14.) Faloni, however, did not file a motion to amend its Complaint or submit a proposed Amended Complaint for the Court's review. Without a motion and a proposed Amended Complaint, the Court is unable to grant Faloni's request to amend at this time. *See Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913–14 (8th Cir. 2002) (affirming denial of request for leave to amend where party failed to submit a motion to amend or proposed amended pleading).

Citibank asks the Court to dismiss the remaining counts in the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## DISCUSSION

**A.      Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court assessing such a motion must accept all factual allegations in the complaint as true and draw all inferences in favor of the nonmovant. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010); *Brooks v. Midwest Heart Group*, 655 F.3d 796, 799 (8th Cir. 2011). Courts consider "plausibility" by

"'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts must "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n. 4 (8th Cir. 2010)).

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), courts primarily look to the complaint and "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for summary judgment." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n. 3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

"On a motion to dismiss for breach of contract, courts look not only at the sufficiency of the complaint but also at the contract itself, which by definition is integral to the complaint." *Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017). *See also Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss."). A copy of the governing contract is not attached to Faloni's Complaint, but before the case was transferred to South Dakota, the parties agreed that the governing contract is a contract signed by the parties on or about January 1, 2013. *See* Doc. 33 at p. 3 (the parties agreed that the contract is authentic and "is the operative and controlling agreement pertaining to the claims"). A copy of the contract entitled "Attorney Collection Services Master Agreement" is attached as Exhibit 1 to the Declaration of Christopher Comstock, doc. 57. In ruling on Citibank's Rule 12(b)(6) motion to dismiss, the Court will consider the Master Agreement ("Agreement") filed at Doc. 57-1.

As a preliminary matter, the Court must decide what other documents, if any, it can consider for purposes of the Rule 12(b)(6) motion to dismiss. Both Citibank and Faloni have attached various documents to two declarations filed in this case. (Doc. 57, Declaration of Christopher Comstock; Doc. 67, Declaration of David A. Faloni, Sr.) The Court concludes that it may consider the excerpts from Citibank's Attorney Work Standards, attached as Exhibit 1 to the Declaration of David A. Faloni Sr., as a document "integral to the claim." *Miller*, 688 F.3d at 931 n. 3. The Attorney Work

4

Standards are incorporated into the Agreement between the parties.[1] Citibank does not admit or deny that its Attorney Work Standards are incorporated into the Agreement, but it does not deny the existence or authenticity of the Attorney Work Standards excerpts that are attached as Exhibit 1 to the declaration of David A. Faloni, Sr.

The Court also will consider the Consent Judgment Citibank entered into with the United States, the District of Columbia, and 49 states. (Doc. 57, Comstock Declaration, Exhibit 2.) The Consent Judgment is filed in *United States v. Bank of Am. Corp., et al.*, No. 1:12-cv-361, Consent Judgment (Doc. 12) (D.D.C. April 4, 2012). The Consent Judgment is referred to in the Complaint as "the national mortgage settlement campaign," and it is a public court filing that is a matter of public record. *See State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999) (reasoning that "[s]ome materials that are part of the public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion to dismiss.") (citations omitted). The Final Consumer Relief Report regarding Citibank's satisfaction, as of June 30, 2013, of its consumer relief obligations under the Consent Judgment, filed in the District of Columbia action, also will be considered. (Doc. 57, Comstock Declaration, Exhibit 6.)   The consideration of

---

[1] "Exhibit A: Attorney Work Standards," is listed as an attachment to the Agreement. (Doc. 57-1, Ex. 1 at p. 18.)  Exhibit A of the Agreement provides:

### EXHIBIT A

### Attorney Work Standards

The terms in this Exhibit A are effective upon the date of this Agreement. Client may, in its sole discretion and without Service Provider's agreement (written or otherwise), modify the Work Standards at any time by providing notice (electronically or by other means) to Service Provider of the modification(s), which modification will be effective as of date sent to Service Provider.

Any conflict between the provisions of the Agreement and Exhibit A shall be resolved in favor of the provisions contained in the most recent version of this Exhibit A.

(Doc. 57-1, Ex. 1 at p. 19.)

judicially noticed facts, such as public court records, does not convert a motion to dismiss into one for summary judgment. *State ex rel. Nixon*, 164 F.3d at 1107.

Citibank argues that the Declaration of Mr. Faloni and the materials attached to it -- which include, among other things, written communications between the parties and the termination notice -- cannot be considered "because a plaintiff may not raise new allegations for the first time in an opposition to a motion to dismiss." (Doc. 68 at p. 1.) The Court has explained exactly what documents it will consider in ruling on Citibank's Rule 12(b)(6) motion to dismiss. To be clear, the Court will not entertain allegations that were raised for the first time in Mr. Faloni's declaration and its attachments, but it will consider all arguments raised by Faloni in opposition to the motion to dismiss that rely on the allegations in the Complaint, the attachments to the Complaint, Citibank's Consent Order, and the Agreement between the parties. *See Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). As explained above, the Court will consider the excerpts from the Attorney Work Standards that are attached to Mr. Faloni's declaration because they are incorporated into the Agreement between the parties.

Finally, both parties submitted documents and arguments regarding the reason Citibank terminated its relationship with Faloni and recalled all of its accounts in November 2014. Each party blames the other for debt collection practices which led to both parties being investigated by federal regulators with the Consumer Financial Protection Bureau. The Court concludes that, for purposes of the motion to dismiss, it need not decide if Faloni gave Citibank cause to terminate the Agreement, and the documents regarding that issue will not be considered.[2]

**B.    Contract Language**

The Agreement states that it "is the sole agreement" between the parties "and supersedes any and all prior oral or written agreements" regarding the services provided by Faloni to Citibank and its affiliates. (Doc. 57-1, Agreement p. 17, ¶ 16.12.) The Agreement was to continue for a twelve-

---

[2] The Agreement provides that either party has the right to terminate the Agreement at any time "with or without cause" by providing the other party thirty (30) days written notice of its intention to terminate the Agreement. (Doc. 57-1, Agreement p. 5, ¶ 5.2.)

month period and remain in effect for an additional twelve months if Citibank were to send Faloni a notice of renewal prior to expiration of the contract term. (*Id.* at ¶ 5.1.)

>Among the terms in the Agreement is a termination provision, which provides that:

>Either Party shall have the right to terminate this Agreement at any time with or without cause upon providing the other Party thirty (30) days written notice of its intention to terminate this Agreement. Termination in accordance with this paragraph shall be without penalty to either Party. Regardless of the effective date of such termination, Service Provider will continue to provide Services to Client until the Accounts are transferred to another Service Provider or recalled by Client in accordance with the Recall provisions contained in Section 2. Each Party shall remain responsible for its respective obligations with regard to actions, events, and Services received or rendered prior to the recall or transfer of the Accounts, however, after an Account is Recalled from Service Provider, nothing in this provision shall require Client to pay Service Provider any fees, claims for payment, unjust enrichment claims or any other compensation or other such claims including, without limitation, the contingent fee set forth in Section 4.1 of the Agreement.

(Doc. 57-1, Agreement p. 5, ¶ 5.2.)

>The obligations set forth in section 2 of the Agreement provide, in relevant part:

>This Agreement does not grant Service Provider [Faloni] any exclusive right to perform services including legal services on behalf of Client [Citibank] or any Affiliates. Notwithstanding any other section or provision of the Agreement, Client may recall or transfer to another Service Provider (collectively referred to as the "Recall") any or all Accounts for any reason, including those reduced to judgment, whether or not payments are being made on the Account . . . . Service Provider shall fully cooperate in the Recall, shall do all things necessary to carry out the Recall, and shall be responsible and pay for any costs associated with the Recall.

>\*   \*   \*   \*

>Upon the sending (electronic or by other means) of a Recall Notification, Service Provider shall not be entitled to any fees, claims for payments, unjust enrichment claims or any other compensation or other such claims including, without limitation, the contingent fee set forth in Section 4.1 of the Agreement.

(Doc. 57-1, Agreement pp. 2–3, ¶ 2.2.)

>The Agreement sets forth the compensation Faloni was to receive for its services:

>As compensation for the Services, Client shall pay to Service Provider the fees set forth in a manner prescribed by Exhibit B to this Agreement. Service Provider acknowledges and agrees that all fees represent the fair value of the Services. . . . Upon Recall of an Account or Accounts, Service Provider shall not be entitled to any

fees, claims for payments, unjust enrichment claims or any other compensation claims including, without limitation, the contingent fee set forth in this Section 4.1 of the Agreement.

(Doc. 57-1, Agreement pp. 3–4, ¶ 4.1.) Exhibit B sets Faloni's contingent fee as 19% of the sum of "Gross Debt Collected." (Doc. 57-1, Ex. B.) "Gross Debt Collected" is defined as "The amount of money collected by Service Provider on an Account, including the principal debt amount, interest earned on judgment, and attorney's fees awarded at judgment." (Doc. 57-1, Agreement p. 2, ¶ 1.9.)

In order to receive payment under the Agreement, Faloni is required to send Citibank an invoice that "itemize[s] the Services provided and the actual costs and fees charged." *Id.* p. 4, ¶ 4.2. Additionally, "[a]ny invoice received more than ninety (90) days after the completion of the Service being billed or including amounts exceeding the allowable fees will not be paid." *Id.*

Exhibit A of the Agreement refers to "Attorney Work Standards." (Doc. 57-1, Ex. A.) Faloni attached eight pages of the Attorney Work Standards to the Declaration of David A. Faloni, Sr. (Doc. 67, Ex 1.) Five of the pages consist of the title page and the table of contents.[3] One page entitled "Direct Payments" provides:

**DIRECT PAYMENTS**

**Policy**

Citi applies direct payments to customers' accounts upon receipt.

**Requirements**

- Firms must post direct payments and reversals to customers' accounts within 1 business day of maintenance file receipt for electronic placements and for manual placements upon notification by Citi.

- Firms must validate balance for manual placements prior to filing suit to insure correct balance is pursued.

    o   See contact list for appropriate 'Support Unit'

- Firms must notify applicable product support unit within 2 business days of direct payments not reflected or reported with the following information:

---

[3] The excerpts indicate that the Attorney Work Standards document consists of 216 pages.

- Direct Payment investigation form
- Copy of the front and back of payment instrument

(Doc. 67-1.)

**C.  ANALYSIS**

### 1.  Count I:  Breach of Contract

#### a.  Express Contract

In the breach of contract claim, Faloni alleges that Citibank agreed to pay Faloni a 19% fee "for services rendered in the collection of Citi's delinquent mortgage loan accounts." Complaint ¶ 9. Faloni contends that Citibank received credit for $40 million worth of mortgage receivables and "[t]he agreement contained an implied covenant of good faith and fair dealing to pay Faloni its contingent fee on credits received by Citi." Complaint ¶¶ 10, 11.

South Dakota choice-of-law principles control in this case because this Court sits in South Dakota. *Lane v. Celadon*, 543 F.3d 1005, 1007 (8th Cir. 2008) ("A district court sitting in diversity must apply the choice-of-law rules of the state in which it sits.") (internal citation omitted). South Dakota courts have "generally recognized that parties may agree to be bound by the law of a particular state," and "are free to choose which state's law will apply, subject to 'overriding public policy concerns.'" *Duffield v. MPC Pipelines, Inc.*, 2017 WL 89004, at *2 (D.S.D. Jan. 10, 2017) (quoting *Butler Mach. Co. v. Morris Const. Co.*, 682 N.W.2d 773, 776 (S.D. 2004)).  Here, the Agreement states that it "shall be governed by, and construed in accordance with, the laws of the State of South Dakota."  Doc. 57-1, Agreement p. 17, ¶ 16.10.  Thus, South Dakota law applies to Faloni's breach of contract claim.

In South Dakota, "[t]he elements of a breach of contract are (1) an enforceable promise; (2) a breach of the promise; and (3) resulting damages." *Bowes Constr., Inc. v. S.D. Dept. of Transp.*, 793 N.W.2d 36, 43 (S.D. 2010). Contract interpretation is a question of law which is to be determined by the Court. *Yarcheski v. Reiner*, 669 N.W.2d 487, 495 (S.D. 2003). Whether the language of a contract is ambiguous is therefore a question of law for the Court. *Ziegler Furniture And Funeral Home, Inc. v. Cicmanec*, 709 N.W.2d 350, 355 (S.D. 2006). "A contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Pauley v. Simonson*, 720 N.W.2d 665, 668 (S.D. 2006) (citation omitted).  Furthermore "a contract is not

rendered ambiguous simply because the parties do not agree on its proper construction or their intent upon executing the contract." *Ziegler*, 709 N.W.2d at 355. When a contract is clear and unambiguous, a court cannot go beyond the provisions of the contract. *Gettysburg School District 53-1 v. Larson*, 631 N.W.2d 196, 200 (S.D. 2001).

Whether Citibank breached a promise under the Agreement presents a legal question of contract interpretation. Under South Dakota law, the intent of the parties is presumed to reside in the language they choose to use in their agreement. *Pesicka v. Pesicka*, 618 N.W.2d 725, 727 (S.D. 2000). "If that intention is clearly manifested by the language of the [Agreement], it is the duty of this court to enforce it." *Id.* (quoting *In Re Estate of Stevenson*, 605 N.W.2d 818, 821 (S.D. 2000). Under the language of the Agreement, Faloni earned a "contingent fee" for collection litigation in the amount of 19% "of the sums of Gross Debt Collected, excluding reimbursed Court Costs." (Doc. 57-1, Agreement p. 20, Ex. B.) The term "Gross Debt Collected" is defined as "[t]he amount of money collected by [Faloni] on an Account, including the principal debt amount, interest earned on judgment, and attorney's fees awarded at judgment." (Doc. 57-1, Agreement p. 2, ¶ 1.9.)

Faloni implores the Court to interpret the word "collected" to include "credit" on an account. (Doc. 66 at 7.) Faloni relies on the Attorney Work Standards and the "pattern and practice of the parties" to pay Faloni a commission when a customer made a payment directly to Citibank, *i.e.*, "direct payments." (*Id.*) The argument is that when Citibank forgave the debts on customer accounts and received credit toward its obligation to provide consumer debt relief, that was akin to a "direct payment" to Citibank. Thus it was a "collection" on the customer accounts placed with Faloni and Faloni should receive a commission.

Examining the Agreement as a whole, the Court concludes that the interpretation advocated by Faloni is not objectively reasonable. The contract language must be construed according to the plain meaning of its terms. *Yarcheski*, 669 N.W.2d at 496. Here, a reasonable interpretation of "collected" does not include the credit Citibank received for forgiving customer loans. Furthermore, Citibank obtaining credit toward its obligation to provide consumer debt relief simply does not meet the plain meaning of a "direct payment" to Citibank. This interpretation of the contract language is consistent with the stated purpose of the contract to pay Faloni commissions on money it collected for Citibank.

Because the Court finds that the Agreement is unambiguous, there is no need to refer to the rules of construction. Additionally, the Court may not look to the parties' course of dealing as evidence that the parties intended a meaning contrary to what is expressed in the Agreement. *Western States Land & Cattle Co., Inc. v. Lexington Ins. Co.*, 459 N.W.2d 429, 434 (S.D. 1990) (holding that "obligations created under course of dealing or usage of trade are subordinate to any terms of an express agreement with which the parties' conduct or a trade usage disagree" and that "express terms of the contracts control in the face of inconsistency") (quoting *Swiden Appliance & Furniture, Inc. v. Nat'l Bank of South Dakota*, 357 N.W.2d 271 (S.D. 1984)).

For the foregoing reasons, Citibank's motion to dismiss is granted to the extent Faloni alleges an express breach of the Agreement.

### b.     Implied Covenant of Good Faith and Fair Dealing

Faloni alleges in the Complaint that the Agreement contained an implied covenant of good faith and fair dealing to pay Faloni a contingent fee on the credits Citibank received when it forgave mortgage loans that it had placed in collection with Faloni. The implied covenant of good faith and fair dealing "allows either party to sue for breach of contract 'even though the conduct failed to violate any of the express terms of the contract agreed to by the parties.'" *Mahan v. Avera St. Luke's*, 621 N.W.2d 150, 160 (S.D. 2001) (quoting *Garrett v. BankWest, Inc*., 459 N.W.2d 833, 841 (S.D. 1990)). The South Dakota Supreme Court has recognized that "'[e]very contract contains an implied covenant of good faith and fair dealing [that] prohibits either contracting party from preventing or injuring the other party's right to receive the agreed benefits of the contract.'" *Farm Credit Servs. of Am. v. Dougan*, 704 N.W.2d 24, 28 (S.D. 2005) (quoting *Garrett*, 459 N.W.2d at 841). This duty of good faith permits an aggrieved party to bring a breach of contract action when the other party "by lack of good faith, limited or completely prevented the aggrieved party from receiving the expected benefits of the bargain." *Garrett*, 459 N.W.2d at 841. "A breach of contract claim is allowed even though the conduct failed to violate any of the express terms of the contract agreed to by the parties." *Id*., 459 N.W.2d at 841 (citations omitted). Ultimately, the duty "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Id.* (citing *Restatement (Second) of Contracts* § 205, cmt a (1981)).

Citibank contends that the Agreement bars Faloni's claim for breach of the implied covenant of good faith and fair dealing because the parties "contracted over" the implied covenant. This

11

Court has held that South Dakota law does not prevent parties from expressly disclaiming any reliance on the implied covenant of good faith and fair dealing. *See Water Works Bd. of City of Birmingham v. U.S. Bank Nat'l Ass'n*, 2018 WL 3448347, at *6 (D.S.D. July 17, 2018).  In *Water Works*, this Court dismissed the plaintiff's claim for breach of the implied covenant of good faith and fair dealing, reasoning:

> Plaintiffs do not point to, and the Court cannot find, any restriction South Dakota law has imposed on a party's freedom of contract and its ability to contract over the implied covenant of good faith and fair dealing. The parties in this case did contract over such an obligation in Section 10.1 of the Indenture Agreements: "The Trustee hereby accepts the trusts imposed upon it by this Indenture and agrees to perform said trusts, but only upon and subject to the following express terms and conditions, and no implied covenants or obligations shall be read into this Indenture against the Trustee." South Dakota public policy strongly favors freedom to contract. *Unruh Chiropractic Clinic v. De Smet Ins. Co. of South Dakota*, 782 N.W.2d 367, 372–73 (S.D. 2010). "Although freedom of contract is not absolute," Plaintiffs must identify policy concerns to justify abridging freedom of contract in the case at hand. *See Richland State Bank v. Household Credit Servs., Inc.*, 340 F.Supp.2d 1051, 1058–59 (D.S.D. 2004) (citing *Hieb v. Opp*, 458 N.W.2d 797, 801 (S.D. 1990); *Computrol, Inc., v. Newtrend, L.P.*, 203 F.3d 1064, 1070 (8th Cir. 200) (basis for enforcement of limitation of liability clause is strong public policy favoring freedom of contract)). Plaintiffs have not done so. Therefore, Plaintiffs' claim for breach of implied covenant of good faith and fair dealing is dismissed.

*Water Works*, 2018 WL 3448347, at *6.  Here, the language of the Agreement expressly contracts over the implied covenant of good faith and fair dealing.  The Agreement provides that it "is the sole agreement between the Parties . . . and supersedes any and all . . . covenants . . . between or among the Parties concerning such matters." Agreement p. 17, ¶ 16.12.  In addition, the parties "expressly acknowledge[d]" that they "are not relying, nor have they relied, upon any previous or contemporaneous implied agreements (in fact or in law) . . . covenants, promises, conditions, or understandings, either oral or written, other than those contained and expressly set forth in the terms of this Agreement." *Id.* (emphasis added).  Faloni has failed to identify a policy concern that would justify abridging the parties' freedom to contract over the implied covenant.  Thus, Faloni cannot invoke that covenant to support its breach of contract claim.

    **2.**     **Count II:  Promissory Estoppel**

In its promissory estoppel claim, Faloni alleges that it rendered services to Citibank "[i]n reliance on Citi's assurances that Faloni would be paid in full for its services." Complaint ¶ 15.

Citibank argues that promissory estoppel does not apply when claims arise from a valid, express contract. In addition, Citibank contends that Faloni has failed to state a claim for promissory estoppel under South Dakota law.

In response, Faloni contends that discovery could reveal the Agreement was not in effect during the time Citibank "credited the accounts in question." (Doc. 66 at 10.)

Citibank's first argument is rejected. At the motion to dismiss stage, courts "routinely permit the assertion of contract and quasi-contract claims together." *Cummins Law Office, P.A. v. Norman Graphic Printing Co.*, 826 F.Supp.2d 1127, 1130 (D.Minn. 2011). The right of plaintiffs to state their case on alternative theories has "uniformly been upheld in the federal courts and plaintiff[s] cannot be required to elect upon which theory to proceed." *Mastec North America, Inc. v. Allegiance Communications, LLC*, 2008 WL 161348, *3 (W.D.Ark. 2008) (holding that the claims of breach of contract and unjust enrichment cannot be disallowed merely because they are based on inconsistent theories) (citing *Breeding v. Massey*, 378 F.2d 171, 178 (8th Cir. 1967) and *Turley Martin Co. v. Gilman Paper Co.*, 905 F.2d 235, 237 (8th Cir. 1990)).

Citibank's second argument also fails. Faloni's allegations are sufficient to state a claim for promissory estoppel that is plausible on its face. "Promissory estoppel may be involved where a promisee alters his position to his detriment in the reasonable belief that a promise would be performed." *Garrett*, 459 N.W.2d at 848. To ultimately prevail on a promissory estoppel claim, Faloni must establish the detriment it suffered in reliance on Citibank's promise was substantial in an economic sense; that Faloni's loss was foreseeable by Citibank; and that Faloni acted reasonably in justifiable reliance on the promise made. *See id.*

Faloni alleges that it should be compensated for legal services it performed for Citibank "[i]n reliance on Citi's assurances that Faloni would be paid in full for its services." Complaint ¶ 15. It is unclear at this point what services Faloni performed for Citibank that may go beyond the payments that are expressly contemplated by the Agreement. If there are additional relied-upon promises made by Citibank with regard to services provided by Faloni that are not expressly governed by the Agreement, Faloni may seek to recover those costs under a promissory estoppel theory. Faloni's allegations that it relied on assurances that it would be paid in full for its services,

13

it continued to render services, and it was harmed as a result are sufficient to state a claim for promissory estoppel. Accordingly, Citibank's motion to dismiss Faloni's promissory estoppel claim is denied.

### 3. Count 3: Unjust Enrichment

In Count III of its Complaint, Faloni alleges that Citibank was unjustly enriched by retaining the money it owes Faloni for its services, supplies and materials. Complaint ¶¶ 18, 20.

"[Unjust enrichment] occurs when one confers a benefit upon another who accepts or acquiesces in that benefit, making it inequitable to retain that benefit without paying." *Mack v. Mack*, 613 N.W.2d 64, 69 (S.D. 2000) (quoting *Parker v. W. Dakota Insurors, Inc*., 605 N.W.2d 181, 187 (S.D. 2000)) (citation omitted). "When unjust enrichment is found, the law implies a contract, which requires the defendant to compensate the plaintiff for the value of the benefit conferred." *Id.* In order to state a claim of unjust enrichment, a plaintiff must allege facts showing that: "(1) a benefit was received; (2) the recipient was cognizant of that benefit; and (3) the retention of the benefit without reimbursement would unjustly enrich the recipient." *Id.*

Citibank first argues that the contract governs the payments to Faloni and, therefore, Faloni's unjust enrichment claim must be dismissed. However, there is a dispute regarding the applicability of the Agreement to some of the services provided by Faloni, and it is too early to determine whether the Agreement specifically addresses all of the services alleged. In addition, Faloni is allowed to assert a claim for unjust enrichment as an alternative to its breach of contract claim. *See*, *e.g.*, *Genz-Ryan Plumbing & Heating Co. v. Weyerhaeuser NR Co.*, 352 F. Supp. 3d 901, 907 (D. Minn. 2018) ("This Court has repeatedly allowed plaintiffs to plead unjust enrichment claims in the alternative to contract claims.") (citing cases).

Citibank also argues that Faloni failed to plead the elements of unjust enrichment. The Court concludes that Faloni has sufficiently pleaded a claim for unjust enrichment that is plausible on its face by alleging Citibank unfairly benefited from Faloni's legal services without compensation. Accordingly, Citibank's motion to dismiss Faloni's unjust enrichment claim is denied.

**IT IS ORDERED**:

1. That Defendant Citibank's Motion to Dismiss (Doc. 55) is granted as to Faloni's claim for breach of contract in Count I of the Complaint, and as to

the claims for "accounts stated" in Counts IV and V. The motion to dismiss is denied as to Counts II and III for promissory estoppel and unjust enrichment.

2. Citibank shall file an answer to the remaining claims on or before the 28th day of August, 2020.

Dated this 13th day of August, 2020.

BY THE COURT:

_____
Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

_____