UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| FALONI & ASSOCIATES, LLC, | 4:19-CV-4195-LLP |
| Plaintiff, | |
| | MEMORANDUM OPINION AND ORDER |
| vs. | |
| CITIBANK N.A.; a/k/a CITIMORTGAGE, INC.; a/k/a CITIFINANCIAL, INC., | |
| Defendant. | |

This case arises out of a dispute between a law firm, Faloni & Associates, LLC ("Faloni"), and Citibank, N.A.; a/k/a Citimortgage, Inc.; a/k/a Citifinancial, Inc. ("Citibank"). Faloni's remaining claims against Citibank in this case are promissory estoppel, unjust enrichment, and quantum meruit. Through these claims, Faloni seeks to recover for collection and legal work it performed on certain second mortgage accounts that Citibank placed with Faloni but later recalled. Citibank filed a motion for summary judgment on March 1, 2023. (Doc. 128.) Faloni filed a motion for summary judgment on May 1, 2023. (Doc. 144.) Both motions are fully briefed and ready for ruling. For the following reasons, Faloni's motion for summary judgment is denied and Citibank's motion for summary judgment is granted in part and denied in part.

## BACKGROUND

The background of this case is set forth in previous Memorandum Opinions (Docs. 70, 85), and it will not be repeated here.

## PRINCIPLES OF SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from

the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273–74 (8th Cir. 1988). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (internal quotation marks omitted).

"[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983) (citations omitted). "Cross-motions for summary judgment require viewing the evidence in the light most favorable to the plaintiff and defendant in turn, depending on whose motion is being considered." *Pitman Farms v. Kuehl Poultry, LLC*, 48 F.4th 866, 875 (8th Cir. 2022) (citing *Fjelstad v. State Farm Ins. Co.*, 845 F. Supp. 2d 981, 984 (D. Minn. 2012)).

## FACTS

Faloni admitted most of the facts in Citibank's Statement of Material Facts, Doc. 130, and those admitted facts are set forth here. The Court will note when Faloni disagrees with a fact asserted by Citibank.

From at least 2007 through November 2014, Faloni represented Citibank and certain of its affiliates in connection with various legal proceedings. Among other things, Faloni filed lawsuits

and took other actions to collect debts owed by delinquent borrowers on second mortgage loans. Faloni denies that all of the work it performed for Citibank was performed pursuant to the terms of the written Agreement between the parties. (Doc. 142, p. 1, ₱ 3.)

From time-to-time, and generally at the start of a new year, the parties would execute a new agreement that would supersede and replace the prior written agreement governing the same subject matter. Effective January 1, 2013, Citibank and its affiliates, CitiMortgage, Inc. and CitiFinancial, Inc., entered into an Attorney Collection Services Master Agreement ("2013 Agreement") with Faloni. David Faloni Jr. executed the 2013 Agreement on behalf of Faloni. The 2013 Agreement replaced the prior express agreements between the parties governing the same subject matter. The 2013 Agreement expressly governs Faloni's provision of "services," which includes "collection and legal services in connection with Accounts" and "Collection and Recovery Services (i.e. recovering (in part or in full) amounts due from Customers and/or obtaining payment commitments from Customers with respect to Accounts that are past due or are in default." The 2013 Agreement defines "Account" to include "[a] loan, extension of credit, credit card, or other type of financial account" used by Citibank or its affiliates "to extend credit to Customers." "Customer(s)" are "[t]hose persons who have obtained an Account" from Citibank, which are serviced by Citibank or its affiliates.

The 2013 Agreement states that it is to be "governed by, and construed in accordance with, the laws of the State of South Dakota without regard to its principles of conflict of laws." The 2013 Agreement required Faloni to "comply with all applicable Laws, ordinances, codes, and regulations" in performing legal services for Citibank.

Under the 2013 Agreement, Faloni was to be compensated for representing Citibank in debt-collection litigation through "a contingent fee [of 19%] of the sum of Gross Debt Collected, excluding reimbursed Court Costs." "Gross Debt Collected" is defined as "[t]he amount of money collected by [Faloni] on an Account, including the principal debt amount, interest earned on judgment, and attorney's fees awarded at judgment." The 2013 Agreement includes provisions for hourly compensation, but only in the context of work involving bankruptcy matters, counterclaims, or appeals. None of these provisions are at issue with respect to the claims in this matter.

To receive payment under the Agreement, Faloni was required to send Citibank an invoice that "itemize[s] the Services provided, and the actual costs and fees charged." Faloni was required to send the invoice within 90 days of performance, and "[a]ny invoice received more than ninety (90) days after the completion of the Service being billed or including amounts exceeding the allowable fees will not be paid."

The 2013 Agreement provides that Citibank was not obligated to obtain legal services exclusively from Faloni and "shall be free to obtain" such services from other law firms. Furthermore, Citibank could "recall or transfer to another [law firm] (collectively referred to as the 'Recall') any or all Accounts for any reason, including those reduced to judgment, whether or not payments are being made on the Account." Faloni was required to "fully cooperate" in any recall and to "do all things necessary to carry out the Recall, and shall be responsible and pay for any costs associated with the Recall." In the event that Citibank recalled or transferred any accounts, Faloni "shall not be entitled to any fees, claims for payments, unjust enrichment claims or any other compensation or other such claims including, without limitation, the contingent fee set forth in Section 4.1 of the Agreement."

The 2013 Agreement also provides that Faloni's obligations to "fully cooperate" in any recall and to "pay for any costs associated with the Recall" "shall survive the termination of this Agreement." The 2013 Agreement includes a 12-month term, but either party had the right to terminate the Agreement "at any time with or without cause" by providing the other party with 30-days written notice of its intention to terminate the Agreement. Termination "shall be without penalty to either Party," and Faloni shall continue to provide legal services on Citibank accounts until those accounts are transferred to another law firm or recalled by Citibank. The termination provision states that "nothing in this provision shall require" Citibank to pay "any fees, claims for payments, unjust enrichment claims or any other compensation or other such claims including, without limitation, the contingent fee set forth in Section 4.1 of the Agreement."

The parties subsequently executed an amendment to the Agreement dated December 31, 2013, which extended the term of the Agreement through December 31, 2014 but did not otherwise alter the terms and conditions of the Agreement. David Faloni Jr. executed the amendment on behalf of Faloni, and the parties then continued operating under the 2013 Agreement until Citibank terminated the parties' relationship effective as of November 2014.

In April 2012, several large financial institutions entered into five separate Consent Judgments with the U.S. Department of Justice, the District of Columbia, and the attorney generals of 49 states. Collectively, these Consent Judgments were referred to as the "National Mortgage Settlement." Citibank and its affiliates, Citigroup Inc. and CitiMortgage, Inc., entered into one such Consent Judgment. Among other things, the Consent Judgment required Citibank to provide $1.411 billion in consumer relief. Citibank could receive credit towards this obligation by, among other things, modifying first lien mortgages, modifying or writing down second lien mortgages, and creating a refinancing program.

On March 18, 2014, the monitor appointed under the Consent Judgment filed a report in federal court finding that Citibank and its affiliates had "substantially complied" with the consumer relief requirements and "satisfied the minimum requirements and obligations" to provide consumer relief as of June 30, 2013. The monitor's report allowed Citibank to "receive additional credit against its Consumer Relief Requirements for amounts credited pursuant to its Refinancing Program and for principal forgiveness in First Lien Mortgage Modifications and Second Lien Portfolio Modifications" for a period of at least "three years of March 1, 2012," albeit with a penalty. (Doc. 57-6, p. 6.)

After an investigation in 2011 and 2012, the Superior Court of Mercer County, New Jersey entered an order on June 10, 2014 vacating certain judgments in favor of Citibank and its affiliates because Faloni and certain other law firms had unlawfully altered and filed affidavits or certifications in certain cases brought to collect consumer credit card debts. The order required Citibank and its affiliates to return approximately $11 million that had been collected from consumers and to forgo collecting approximately $34 million in additional debt.

Pursuant to the termination provisions of the 2013 Agreement, on October 24, 2014, Citibank sent a letter to Faloni providing formal notice that Citibank was terminating the parties' 2013 Agreement as of November 24, 2014. Citibank requested that Faloni return all customer account data and provide information regarding such accounts within seven days of the termination date. Citibank further requested that Faloni advise Citibank of any pending litigation so that Citibank could arrange to transfer the accounts at issue to another firm. As of the October 24, 2014 letter, Citibank recalled all accounts that were pending with Faloni and directed Faloni to transfer the files to another law firm. Faloni asserts that Jere Taylor of Citbank said Faloni "would be paid

all commissions going forward including any work done for second mortgages." (Doc. 147, Faloni Affidavit, p. 3, ⁋ 10.)

Faloni completed transferring the remaining files to the new law firm by approximately May 2015. On June 2, 2015, Faloni sent an invoice to Citibank in the amount of $21,002.50 representing work Faloni had allegedly performed in transferring the files to the new law firm. Pursuant to the 2013 Agreement, however, Faloni was responsible for any costs incurred in transferring the accounts, so Citibank did not pay Faloni's June 2, 2015 invoice.

In February 2016, Faloni stipulated with the Consumer Financial Protection Bureau ("CFPB") to the entry of a Consent Order given that it unlawfully altered documents filed with courts. In the Consent Order, the CFPB found that Faloni had "altered and filed several hundred Declarations" in lawsuits brought to collect credit card debts owed to Citibank and its affiliates. The CFPB alleged that Faloni had altered "the dates of the Declarations or the amount of the Debts owed or both after the Affiants executed the Declarations," which "misrepresented the facts to which the Affiant had attested and that had formed the basis of the statements made in the Declaration." The CFPB determined that Faloni had violated the Fair Debt Collection Practices Act ("FDCPA") and the Consumer Financial Protection Act ("CFPA"). Among other things, the Consent Order required Faloni to agree to certain "conduct provisions" and pay a civil money penalty. Faloni stipulated to the issuance of the Consent Order without admitting or denying the findings of fact or conclusions of law therein.

Also in February 2016, Citibank entered into a Consent Order with the CFPB regarding the alteration of declarations by Faloni. Among other things, the Consent Order required Citibank to comply with the June 2014 New Jersey state court order to refund $11 million to consumers and to forgo collecting an additional $34 million.

On May 7, 2018, over three years after Citibank terminated its relationship with Faloni, Faloni sent a letter to Citibank and attached two invoices. The first invoice was the prior June 2, 2015 bill in the amount of $21,002.50 for work Faloni allegedly performed in transferring its files to the new firm. The second invoice was dated May 7, 2018 and allegedly related to loans that Citibank had placed with Faloni and then recalled. According to Faloni, Citibank had recalled approximately 460 accounts and forgiven the debt on those accounts in connection with the consumer relief provisions of the National Mortgage Settlement. Faloni asserted that Citibank had

6

forgiven accounts with outstanding balances of greater than $40 million and sought 20% of that allegedly forgiven debt, or approximately $8 million, as a contingent fee. Faloni mistakenly calculated the alleged invoice amount using a 20% contingent fee, rather than the 19% contingent fee set forth in the parties' Agreement. However, because Citbank believed Faloni was not entitled to any payment under the Agreement, Citibank did not pay either invoice.

During the course of discovery, Faloni has abandoned its request for $8 million or for any amount of damages calculated pursuant to the commission fee in the 2013 Agreement. Instead, Faloni now seeks to recover approximately $3 million in damages allegedly representing time spent by Faloni's attorneys and paralegals on approximately 460 second mortgage accounts. According to Faloni, Citibank placed those accounts with Faloni for collection but allegedly recalled the accounts at various points between late 2012 and the termination of the parties' relationship in November 2014. Faloni asserts that Citibank forgave the debts on the accounts or transferred the accounts to another law firm for collection.

Faloni contends that the accounts where the debt was extinguished were not transferred to another law firm since the balances were zero. According to Faloni:

> If a file was recalled by Citibank or submitted for credit by Citibank, Faloni was required to file warrants of satisfaction, dismiss all executions, remove all liens and encumbrances. In each case, the mortgage debtor received a forgiveness letter (Doc. 67-4, p. 1-3 and Faloni Cert ¶ 20). There was no substitution of attorneys as the recalled files had no balance and was already sent by Citibank for credit against the fine (Faloni Cert ¶ 16). Unknown to Faloni its work was essential to qualifying the accounts for credit (Faloni Cert ¶ 14 and Exhibit H). In essence, Plaintiff was working against itself. Faloni was not working to collect money on the file but to help Citibank qualify the account for a credit against the fine. Citibank was the only winner (Faloni Cert ¶ 14 and Exhibit H pages 29 and 45).

(Doc. 141, p. 5.)

In discovery, Citibank served Faloni with requests for admission, which asked Faloni to admit, among other things, the following statements:

> REQUEST NO. 1: Admit that every loan placed with you by Citibank for collection was placed pursuant to and subject to the terms of the Agreement or to another express contract between the parties.

> REQUEST NO. 2: Admit that any work or services performed by you for Citibank was performed pursuant to and subject to the terms of the Agreement or to another express contract between the parties.

REQUEST NO. 10: Admit that, under the Agreement, Citibank had the right to "recall or transfer . . . any or all Accounts for any reason, including those reduced to judgment, whether or not payments are being made on the Account."

(Doc. 131-7, p. 3.)

Faloni responded:

1. Admit. All accounts were placed pursuant to one of Defendant's numerous agreements (see production of documents).

2. Admit. All accounts were placed pursuant to one of Defendant's numerous agreements (see production of documents).

10. Admit. All accounts were worked and serviced pursuant to one of Defendant's numerous agreements (see production of documents).

(Doc. 131-8.)

Mr. David Faloni Sr. testified at his Rule 30(b)(6) deposition that the work performed by Faloni on Citibank's second mortgage accounts was performed pursuant to contracts with Citibank.

## DISCUSSION

As an initial matter, the Court will address Citibank's argument that Faloni has admitted their services fall within the scope of its Agreement with Citibank and thus are not recoverable through a quasi-contractual claim. Under the Agreement, Faloni was retained by Citibank to collect delinquent mortgage accounts for a contingent fee. It is true that, when the accounts were placed with Faloni, they were placed pursuant to Faloni's Agreement with Citibank, and Faloni performed work on those accounts to get them collected. However, according to Faloni, Citibank later changed the relationship between the parties by requiring Faloni to litigate the files and provide information on the accounts to qualify the accounts for credit against Citibank's fine. Unbeknownst to Faloni, Faloni was no longer retained to collect on the accounts as was agreed to under the contract between the parties.[1] Faloni asserts that Citibank employees closely monitored and directed this particular work performed by Faloni.

---

[1] Faloni contends that Citibank never revealed to Faloni that it would recall hundreds of accounts and forgive the debt on those accounts in order to obtain relief under the National Mortgage Settlement.

Faloni admitted that the accounts were placed with the law firm pursuant to its Agreements with Citibank for collection work, and it is true that Faloni initially conducted work on those accounts pursuant to the Agreements. But Faloni asserts that the work eventually performed was no longer collection work for which it would receive a contingent fee under the Agreements. A material question of fact exists regarding whether the work Faloni performed in packaging the accounts for Citibank to receive credit in the National Mortgage Settlement was extracontractual work that fell outside the scope of the Agreement. *See, e.g., Marshall v. Elmo Greer & Sons, Inc.,* 456 S.E.2d 554, 558 (W.Va. 1995) ("The extent of the work subject to the contract presents a genuine issue of fact to be tried.").

Citibank also argues that the doctrine of "unclean hands" bars Faloni from equitable relief for "its performance of services under the Agreement" because Faloni violated both the Agreement and the governing statutes by unlawfully altering documents filed in lawsuits brought to collect credit card debts owed to Citibank and its affiliates. (Doc. 129, pp. 27-29.)

Under the "unclean hands" doctrine, the alleged wrongdoing must be directly related to the claim against which unclean hands is asserted. *Adrian v. McKinnie,* 639 N.W.2d 529, 535 (S.D. 2002) ("Unrelated misconduct will not bar relief: 'What is material is not that the plaintiff's hands are dirty, but that he dirties them in acquiring the right he now asserts.' ") (quoting *Republic Molding Corp. v. B.W. Photo Utilities,* 319 F.2d 347, 349 (9th Cir. 1963)).

In this case, Faloni seeks relief for work on the second mortgage accounts Citibank received credit for in the National Mortgage Settlement. Citibank asserts that Faloni acted inequitably in lawsuits brought to collect credit card debts owed to Citibank. It is not clear from the record whether Faloni's unlawful behavior is related to any of the mortgage accounts Citibank received credit for in the settlement. Thus, whether Faloni acted inequitably with regard to its claims in this case might be a question of fact for trial. *See, e.g., Schoenbaum Ltd. Co., LLC v. Lenox Pines, LLC,* 585 S.E.2d 643, 657 (Ga.Ct.App. 2003) ("Even if the doctrine of unclean hands could bar defendants' assertion of laches, whether defendants have acted inequitably is a question of fact not amenable to summary judgment."). However, unless Citibank shows that Faloni may have had unclean hands with regard to the mortgage accounts, there will not be an unclean hands issue for trial.

I.    **Citibank's Motion for Summary Judgment**

A.    **Promissory Estoppel**

To establish a claim for promissory estoppel, a plaintiff must show that he altered his "position to his detriment in the reasonable belief that a promise would be performed." *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 848 (S.D. 1990). "Assuming a promise is identified, the elements of promissory estoppel are: (1) the detriment suffered in reliance must be substantial in an economic sense; (2) the loss to the promisee must have been foreseeable by the promisor; and (3) the promisee must have acted reasonably in justifiable reliance on the promise made." *Hofer v. Liberty Nat. Bank*, 2012 WL 5945169, at *3 (D.S.D. Nov. 28, 2012) (citing *Canyon Lake Park, L.L.C. v. Loftus Dental, P.C.*, 700 N.W.2d 729, 739 (S.D. 2005)).

The Court must first determine if a promise was made by Citibank to compensate Faloni for the alleged quasi-contractual work. "A promise is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Restatement (Second) of Contracts § 2 (1981).

Here, Faloni relies on a statement allegedly made by Jere Taylor of Citibank sometime in 2010, 2011, or 2012 during an investigation for negligent handling of mortgage foreclosures. (Doc. 147, Faloni Affdiavt, p. 3, ¶¶ 9-10.) According to Faloni, "Jere Taylor of Citibank told our office that we would be paid all commissions going forward including any work done for second mortgages." (*Id.* at ¶ 10.)

This alleged statement by Taylor is simply too vague and indefinite to constitute a "promise" for purposes of promissory estoppel. Citibank is entitled to summary judgment on this claim.

B.    **Quantum Meruit**

"Quantum Meruit implies a contract where none exists and awards restitution for the value of the services provided. To recover under quantum meruit, the plaintiff must prove, among other things, that the defendant requested the plaintiff's services and the plaintiff reasonably expected to be paid." *Johnson v. Larson*, 779 N.W.2d. at 417 (S.D. 2010) (citing *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 477 (7th Cir. 2009); *Amend v. 485 Properties*, 280 Ga. 327, 627 S.E.2d 565, 567 (2006); *Hollifield v. Monte Vista Biblical Gardens, Inc.*, 251 Ga.App. 124,

553 S.E.2d 662, 668 (2001); *Hawk Isolutions Group, Inc. v. Morris*, 288 S.W.3d 758, 761 (Mo.Ct.App. 2009)). While similar to unjust enrichment, quantum meruit provides restitution for the value of the service provided, rather than the value of the benefit unjustly received. *Lindquist Ford, Inc.*, 557 F.3d at 477.

Citibank does not deny that it requested Faloni's services. Questions of fact exist regarding whether Citibank requested additional services outside the scope of the parties' Agreement, and thus whether Faloni expected payment for the alleged extracontractual services provided by Faloni. For these reasons, Citibank is not entitled to summary judgment on the quantum meruit claim.

### C. Unjust Enrichment

Unjust enrichment "allows an award of restitution for the value of the benefit unjustly received, rather than the value of the service provided." *Johnson v. Larson*, 779 N.W.2d at 418. To establish a claim for unjust enrichment, a plaintiff must allege facts showing that: "(1) a benefit was received; (2) the recipient was cognizant of that benefit; and (3) the retention of the benefit without reimbursement would unjustly enrich the recipient." *Mack v. Mack*, 613 N.W.2d 64, 69 (S.D. 2000).

Citibank does not deny that it was cognizant of the work Faloni was performing. If the work Faloni performed fell outside the scope of the Agreement and assisted Citibank in qualifying the accounts for credit and ultimately completing their consumer relief requirements, then Citibank received a benefit. The retention of this benefit without reimbursement would unjustly enrich Citibank.

Because Faloni has presented evidence demonstrating the elements of an unjust enrichment claim, Citibank is not entitled to summary judgment on this claim.

### II.    Faloni's Motion for Summary Judgment

Faloni is not entitled to summary judgment on the remaining claims of quantum meruit and unjust enrichment. This Court's function at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249. Summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried. As explained above, jury

questions exist in this case and Faloni has the burden of proving that it is entitled to recover for the services it claims were beyond the scope of its Agreement with Citibank under the doctrines of quantum meruit and unjust enrichment. "Summary judgments in favor of parties who have the burden of proof are rare, and rightly so." *Turner v. Ferguson,* 149 F.3d 821, 824 (8th Cir. 1998). Accordingly,

**IT IS ORDERED:**

1.   That Citibank's motion for summary judgment (Doc. 128) is granted as to the promissory estoppel claim, and it is denied as to the quantum meruit and unjust enrichment claims.

2.   That Faloni's motion for summary judgment (Doc. 144) is denied.

Dated this **29** day of June, 2023.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK